UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | | |
|---|---|---|
| RITA CANTRELL, | ) | Civil Action No.: 6:06-cv-2723-RBH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| TARGET CORPORATION, a/k/a | ) | |
| TARGET STORES, INC. | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

This matter is before the court on Defendant's [Docket Entry #17] motion for summary
judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.  For the reasons stated
below, Defendant's motion is denied.

### **Factual and Procedural Background**

On February 23, 2006, Plaintiff, Rita Cantrell, attempted to purchase items from a
Target Store in Greenville, South Carolina, with a 1974 Series $100.00 bill.  Target employees,
believing that the $100.00 bill was counterfeit, refused to accept it.  Plaintiff left the store
without purchasing the items.

The next day, Michael Proctor, one of Target's Asset Protection Specialists, e-mailed a
picture of Plaintiff, which was taken from one of Target's security video cameras, to Douglas
Guerry, an employee of Macy's.  The e-mail stated: "Douglas, The lady pictured attempted to
use a counterfeit 100 dollar bill today at 11:40 a.m., it was an older style bill, series 1974.
She had a large Belk's bag with her so she may have hit the mall today." [Docket Entry #17-
3].

In addition to his employment with Macy's, Douglas Guerry is the communications

liaison for an organization known as the Carolina Organized Retail Theft Task Force or

"CORTTF."  Mr. Guerry formed CORTTF for the purpose of sharing information within the

retail loss prevention arena, primarily in the Upstate region of South Carolina.  The CORTTF

membership list contains approximately 63 members and includes retailers, state and federal

law enforcement agencies, and private investigators. [CORTTF Membership List, Docket Entry

#23-9].

Mr. Proctor testified that he sent the e-mail concerning the Plaintiff to Mr. Guerry with

the intent that Mr. Guerry disseminate the information to other members of CORTTF. [Depo.

of Michael Proctor, Docket Entry #23-8].

After receiving the e-mail from Mr. Proctor, Mr. Guerry forwarded the original e-mail

to the members of CORTTF.  Among the CORTTF members who received the forwarded e-

mail from Mr. Guerry were Michelle Barton and Dennis Caruso of the Loss Prevention

Department of Belk, Inc. located at the Haywood Mall office of Belk in Greenville, South

Carolina.  Ms. Barton and Mr. Caruso recognized Plaintiff as an employee of Belk.  After first

contacting local law enforcement regarding the e-mail and the alleged counterfeit $100.00 bill,

Ms. Barton contacted the United States Secret Service field office for Greenville, South

Carolina.

On or about March 1, 2006, Secret Service agents were dispatched to Belk where they

interviewed Plaintiff.  Plaintiff presented the alleged counterfeit $100.00 bill to the agents who

determined that the bill was valid United States currency.

Shortly thereafter, Ms. Barton sent an e-mail regarding the alleged counterfeit $100.00

bill to Mr. Guerry and all other members of CORTTF.  Ms. Barton's e-mail stated:  "Secret

Service, Agent Greg Johnson, has tested this bill and found it to be real.  Please disregard any prior e-mails on this customer.  Destroy any pictures relating to this message." [Docket Entry #17-4].  Mr. Guerry also sent a "corrective" e-mail to the members of CORTTF which stated: "Disregard the counterfeit note email sent out recently.  It has been investigated and resolved." [Docket Entry #17-4].

On September 27, 2006, Plaintiff filed the present action asserting two causes of action: 1) defamation (libel *per se*); and 2) negligence.  Plaintiff's defamation cause of action is based on the publication of the alleged defamatory e-mail sent by Mr. Proctor to Mr. Guerry of Macy's and CORTTF.  Plaintiff's negligence cause of action is based on failure to train and failure to exercise reasonable care.  Plaintiff alleges that: 1) Target failed to properly train its employees in how to recognize and identify counterfeit United States currency; 2) Target's employees failed to properly and thoroughly examine the $100.00 bill in order to determine the bill's authenticity; and 3) Target failed to supervise and properly train its employees to reasonably investigate suspicious activity before publishing accusations of criminal conduct.

On March 13, 2008, Target moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure as to Plaintiff's two causes of action.

### Standard of Review

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Once the moving party makes the showing, however, the opposing party must respond to the motion with "specific facts showing there is a genuine

3

issue for trial." Fed. R. Civ. P. 56(e).

When no genuine issue of any material fact exists, summary judgment is appropriate. *Shealy v. Winston*, 929 F.2d 1009, 1011 (4th Cir. 1991). The facts and inferences to be drawn from the evidence must be viewed in the light most favorable to the non-moving party. *Id*. However, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Id*., *quoting Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

Summary judgment should only be granted in those cases where there is no issue of fact involved and inquiry into the facts is not necessary to clarify application of the law. *McKinney v. Board of Trustees Mayland Community College*, 955 F.2d 924 (4th Cir. 1992). A district court should not grant summary judgment "unless the entire record shows a right to judgment with such clarity as to leave no room for controversy and establishes affirmatively that the adverse party cannot prevail under the circumstances." *Campbell v. Hewitt, Coleman & Assoc.*, 21 F.3d 52, 55 (4th Cir. 1994).

## Discussion

I. Defamation - Libel *Per Se*

The tort of defamation allows a plaintiff to recover for damage to her reputation as the result of the defendant's written or spoken communications to others of a false message concerning the plaintiff. *Erickson v. Jones Street Publishers, LLC*, 629 S.E.2d 653, 664 (S.C. 2006). Defamatory communications take two forms: 1) libel, which is a written defamatory communication; and 2) slander, which is a spoken defamatory communication. *Erickson*, 629

4

S.E.2d at 664.

The essential elements of a claim for defamation are: 1) a false and defamatory statement; 2) unprivileged publication to a third party; 3) fault on the part of the publisher; and 4) actionability of the statement irrespective of special harm or the existence of special harm caused by the publication. *Id.*

A.    Qualified Privilege

In a defamation action, the defendant may assert that the communications were protected by a conditional or qualified privileged as an affirmative defense. *Bell v. Bank of Abbeville*, 38 S.E.2d 641, 642-43 (S.C. 1946); *Murray v. Holnam, Inc.*, 542 S.E.2d 743, 748 (S.C. Ct. App. 2001).   Under the qualified privilege defense, the defendant is not liable for publishing a defamatory communication if: 1) the communication is published upon an occasion that makes the communication conditionally privileged; and 2) the privilege is not abused. *Murray*, 542 S.E.2d at 748.

"A communication made in good faith on any subject matter in which the person communicating has an interest or duty is qualifiedly privileged if made to a person with a corresponding interest or duty even though it contains matter which, without this privilege, would be actionable." *Constant v. Spartanburg Steel Prods., Inc.*, 447 S.E.2d 194, 196 (S.C. 1994).   The protection of a qualified privilege does not extend to unnecessary defamation and may be lost by the manner in which it is exercised. *Fulton v. Atlantic Coast Line R.R.*, 67 S.E.2d 425, 429 (S.C. 1951).   In order for a communication to be privileged, the person making the statement must not go beyond that which his interests or duties require. *Fulton*, 67 S.E.2d at 429.   If the person making the statement exceeds his privilege and the

5

communication goes beyond what the occasion demands that he should publish, and is unnecessarily defamatory of plaintiff, the person making the statement will not be protected. *Id*.

When determining whether a communication is qualifiedly privileged, the court must consider the occasion and the relationship of the parties. *Bell*, 38 S.E.2d at 643.

> When one has an interest in the subject matter of a communication, and the person (or persons) to whom it is made has a corresponding interest, every communication honestly made, in order to protect such common interest, is privileged by reason of the occasion. The statement, however, must be such as the occasion warrants, and must be made in good faith to protect the interests of the one who makes it and the persons to whom it is addressed.

*Id*.

Generally, whether an occasion gives rise to a qualified or conditional privilege is a question of law for the court. *Murray*, 542 S.E.2d at 749; *see also* 50 Am.Jur.2d *Libel and Slander* § 258 (2008). However, whether a qualified privilege has been abused is a question of fact for the jury, unless only one conclusion can reasonably be drawn from the evidence. *Fulton*, 67 S.E.2d at 429; *Murray*, 542 S.E.2d at 749; *see also* 50 Am.Jur.2d *Libel and Slander* § 262. Factual inquiries relevant to a determination of whether a privilege has been abused, which are generally left to the jury, include: 1) whether the defendant acted in good faith in making the statement; 2) whether the statement was properly limited in its scope; and 3) whether the statement was sent only to the proper parties. *Murray*, 542 S.E.2d at 749.

In this case, Target argues that the e-mail sent by Mr. Proctor to Mr. Guerry of Macy's and CORTTF was protected by a qualified privilege. Target argues that both Mr. Proctor and Mr. Guerry shared an interest in the subject matter and contents of the e-mail communication in that both were in the loss prevention field and the communication between them related to a

6

possible criminal act by a shopper at a retail establishment in Greenville, South Carolina. Target further argues that to the extent the alleged defamatory e-mail was republished by Mr. Guerry to the other members of CORTTF, all members of CORTTF had a mutual interest in sharing information of the type submitted by Target's employee, Mr. Proctor.

Plaintiff concedes, for purposes of this motion only, that the e-mail in question is probably entitled to a qualified privilege, but contends that the privilege was abused by the wording of the e-mail and/or by the manner and extent of its publication.

Viewing the evidence in the light most favorable to the Plaintiff, summary judgment would not be appropriate because there are genuine issues of material fact as to whether the privilege was abused.  In particular, genuine issues of material fact remain regarding: 1) whether the communication was properly limited in scope (i.e. whether the language used in the e-mail was unnecessarily defamatory and went beyond that which the occasion required); and 2) whether the e-mail was sent only to the proper parties.

Mr. Guerry, the Loss Prevention Manager for Macy's and founder of CORTTF, testified that the language used in the e-mail was not appropriate.  Mr. Guerry further testified that the language of Mr. Proctor's e-mail was excessive in terms of the allegation it made. [Depo. of Douglas Guerry, Docket Entry #23-5].

Dennis Caruso, an Asset Protection Employee of Belk, who has been in the retail loss prevention business for over 20 years, testified that Mr. Proctor's e-mail to Mr. Guerry was unreasonable and gave the false impression that the Plaintiff was a criminal attempting to pass counterfeit currency. [Depo. of Dennis Caruso, Docket Entry #23-6].  Mr. Caruso also noted that Mr. Proctor's e-mail ignored the possibility that Plaintiff could have been a victim of

7

counterfeiting to the extent that she could have received the $100.00 bill from someone else, for example, a "Mom and Pop" store. *Id*.  Mr. Caruso further testified that following the publication of Mr. Proctor's e-mail to the CORTTF membership list, Belk withdrew from any further involvement with CORTTF. *Id*.

Kristie Guerry, an Asset Protection Employee of Target, testified that although it was not wrong to share information regarding the Plaintiff, the e-mail could have been worded differently to indicate that the $100.00 bill Plaintiff attempted to use at Target was suspected to be counterfeit, not confirmed. [Depo. of Kristie Guerry, Docket Entry #23-4].

Mr. Proctor testified that the purpose of the e-mail was to alert other retailers in the area to the possibility that Plaintiff was attempting to pass counterfeit currency. [Depo. of Michael Proctor, Docket Entry #17-7].  Mr. Proctor also testified that by sending the e-mail to Mr. Guerry he hoped to bring the incident to the attention of the Secret Service.  [Depo. of Michael Proctor, Docket Entry #23-8].  However, Mr. Proctor arguably could have accomplished those purposes without stating unequivocally that "the lady pictured attempted to use a counterfeit 100 dollar bill today."  Accordingly, a reasonable juror might conclude that the language Mr. Proctor used in the e-mail was unnecessarily defamatory and went beyond what the occasion required.

Furthermore, a reasonable juror may conclude that any purported qualified privilege was abused because the e-mail was ultimately forwarded to all members of CORTTF, some of whom do not appear to share an interest with Target in retail loss prevention.  Mr. Proctor testified that he sent the e-mail to Mr. Guerry with the intention that the e-mail be forwarded to the members of CORTTF. [Depo. of Michael Proctor, Docket Entry #23-8].  An argument

could be made that some of the organizations on the CORTTF membership list do not share a corresponding interest in retail loss prevention with Target. For example, the CORTTF membership list includes various members that are not retail operations, such as: 1) Mitchell Reports Investigations, which is a private investigating firm; 2) United States Department of Agriculture - Office of Inspector General; 3) United States Postal Inspector; and 4) Certegy Check Services. Thus, a reasonable juror may conclude that Mr. Proctor's e-mail went beyond the scope of the qualified privilege to the extent that the e-mail was not sent to the proper parties.

### B.    Actual Malice

Libel is actionable *per se* if it involves "written or printed words which tend to degrade a person, that is, to reduce his character or reputation in the estimation of his friends or acquaintances, or the public, or to disgrace him, or to render him odious, contemptible, or ridiculous." *Holtzscheiter v. Thomson Newspapers, Inc.*, 506 S.E.2d 497, 510 (S.C. 1998). "Essentially, all libel is actionable *per se*." *Holtzscheiter*, 506 S.E.2d at 510.

Ordinarily, when a case involves libel that is actionable *per se*, the common law presumes that the plaintiff suffered general damages, and that the defendant acted with common law actual malice. *Id*. However, if the communication is privileged, the plaintiff cannot rely upon the common law presumption of actual malice and must instead prove actual malice. *See Murray*, 542 S.E.2d at 750. Thus, a qualified privilege, even if it does apply, does not prevent liability for defamation if the defamatory statement is made with actual malice. *Eubanks v. Smith*, 354 S.E.2d 898, 902 (S.C. 1987). In other words, the plaintiff may defeat or overcome a qualified privilege by proving that the communication was made with

9

actual malice.

Common law actual malice "means that the defendant was actuated by ill will in what he did, with the design to causelessly and wantonly injure the plaintiff; or that the statements were published with such recklessness as to show a conscious indifference toward plaintiff's rights." *Jones v. Garner*, 158 S.E.2d 909, 914 (S.C. 1968) (emphasis added). Malice may be proved by direct or circumstantial evidence. *Hainer v. American Med. Int'l, Inc.*, 492 S.E.2d 103, 107 (S.C. 1997). "Whether malice is the incentive for a publication is ordinarily for the jury to decide." *Murray v. Holnam, Inc.*, 542 S.E.2d 743, 751 (S.C. Ct. App. 2001). "Proof that statements were published in an improper and unjustified manner is sufficient evidence to submit the issue of actual malice to a jury." *Hainer*, 492 S.E.2d at 107; *Murray*, 542 S.E.2d at 751.

In this case, the absolute nature of the language used by Mr. Proctor (e.g. "the lady pictured attempted to use a counterfeit 100 dollar bill today") and his choice to include Plaintiff's picture in the e-mail creates a jury issue as to whether the e-mail was made with actual malice. Mr. Proctor admitted in his deposition that he did not know for certain whether the $100 bill was counterfeit because he never personally examined the bill. [Depo. of Michael Proctor, Docket Entry #17-7]. However, Mr. Proctor felt that it was appropriate to conclude that the bill was counterfeit for the purpose of sending the e-mail to Mr. Guerry. Even though Mr. Proctor may not have been "actuated by ill will in what he did, with the design to causelessly and wantonly injure the plaintiff," the jury may conclude that Mr. Proctor's conduct exhibited such recklessness as to show a conscious indifference for Plaintiff's rights.

For those reasons, summary judgment is denied as to Plaintiff's defamation claim.

10

II.    <u>Negligence</u>

Target also moved for summary judgment with regard to Plaintiff's negligence claim; however, Plaintiff did not appear to address the issues Target raised with regard to Plaintiff's negligence claim.  Thus, it appears from Plaintiff's memorandum in response to Target's motion for summary judgment that Plaintiff may not intend to pursue the negligence cause of action alleged in her Complaint.  Certainly, Plaintiff does not dispute Target's analysis regarding the relationship between Plaintiff's defamation/libel *per se* claim and any claim based on negligence.  The court denies summary judgment at this time for the reasons set forth in the court's discussion of Plaintiff's defamation claim.

<u>**Conclusion**</u>

For the reasons stated above, Target's motion for summary judgment is **DENIED**.

**IT IS SO ORDERED**.


Florence, SC                                         s/ R. Bryan Harwell
May 1, 2008                                          R. Bryan Harwell
                                                     United States District Judge